# 99 DTA 156

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ**
**PANEL I**

DR. JAIME A. VIQUEIRA MARIANI, SU ESOSA MARIA TERESA KELLER CHARNECO, AMBOS POR SI Y COMO REPRESENTANTES DE LA SOCIEDAD LEGAL DE GANANCIALES

Apelantes

v.

TRIPLE S, INC.

Apelada

Núm. KLCE-99-00283

San Juan, Puerto Rico, a 11 de mayo de 1999

Panel integrado por su Presidenta, la Juez López Vilanova, el Juez Córdova Arone y la Juez Feliciano Acevedo

Córdova Arone, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Dr. Jaime Viqueira Mariani (Dr. Viqueira), su esposa la Sra. María Teresa Keller Charneco y la sociedad legal de gananciales compuesta por ambos, solicitan la revocación de la sentencia dictada el 20 de enero de 1999 por el Tribunal de Primera Instancia, Sala Superior de Mayaguez, mediante la cual se desestimó una demanda sobre incumplimiento de contrato y daños y perjuicios incoada por éstos en contra de Triple S, Inc. (Triple S) y se ordenó a las partes acudir al procedimiento de arbitraje pactado en el contrato suscrito entre éstas. Por los fundamentos que pasamos a exponer más adelante, se confirma la sentencia apelada. Veamos los hechos que sirven de trasfondo a la controversia planteada ante nos.

El 22 de abril de 1991 el Dr. Viqueira inició una relación contractual con Triple S. A esos efectos, las partes otorgaron un *"Contrato para Médico Participante"*. Mediante el mismo, el Dr. Viqueira se obligó a prestar sus servicios profesionales a los asegurados de Triple S debidamente identificados y de acuerdo con los términos y condiciones de la póliza expedida por la compañía. En el Art. I (XVI) del referido contrato se definió el término disputa o controversia como:

*"... aquella situación en que una de las partes contratantes entiende que la otra parte ha incurrido en una violación de los términos y condiciones de este contrato, o los Estatutos o Reglamentos vigentes de Triple S. La notificación de la cancelación de este contrato enviada por una de las partes a la otra o la notificación avisando que el contrato no habrá de renovarse, la interpretación del contenido de las pólizas de los asegurados y los programas de contención de costos no constituirán una disputa o controversia."*

En el Art. VII del contrato se estableció que toda disputa o controversia que surgiera entre Triple S y el Dr. Viqueira, según se definía dicho término en el contrato, sería sometida, considerada y resuelta por la Junta, siguiendo el Reglamento sobre Disputas y Controversias entre Participantes y Triple S (el Reglamento). El Reglamento dispone en su sección 9 que si alguna de las partes no está conforme con la determinación final de la Junta, deberá someter la disputa o controversia a arbitraje dentro de los treinta (30) días siguientes a la fecha de la notificación de dicha determinación.

Cuatro años después, el 10 de julio de 1995, la Dra. Iris Otero (Dra. Otero), Directora de Contención de Costos de Triple S, le cursó una misiva al Dr. Viqueira en la cual le informó que comenzando el 11 de agosto del mismo año, la compañía efectuaría una auditoría en su oficina relativa a los servicios clínicos ofrecidos a los asegurados. El 19 de julio de 1995 la Dra. Otero le escribió otra carta al Dr. Viqueira en la cual se relataban los hallazgos de la auditoría realizada, a saber, servicio no documentado en el expediente clínico, servicio documentado por otro médico y expedientes no localizados durante la auditoría. Se invitó al Dr. Viqueira a visitar las oficinas de la compañía para discutir los extremos antes señalados.

El 26 de febrero de 1996 se celebró una reunión en la cual el Dr. Viqueira expuso su posición y presentó prueba a favor de ésta, luego de la cual las discrepancias en cuanto a los servicios prestados se redujeron de 387 a 228. Un mes después, el 20 de marzo de 1996, el Dr. Viqueira le informó por escrito a Triple S unos datos adicionales que provocaron que las discrepancias relativas a los servicios prestados se redujeran a 161.

El 17 de octubre de 1996 se le notificó al Dr. Viqueira que el caso sería presentado ante el Comité de Utilización y Cargos Razonables de la Junta de Directores de Triple S (el Comité) para una determinación final, la cual podía conllevar la suspensión o cancelación del contrato. Además, se le concedió término para suministrar cualquier información adicional, lo que efectivamente hizo mediante comunicaciones de 30 de noviembre y 13 de diciembre de 1996.

Las partes se reunieron nuevamente el 4 de febrero y el 7 de noviembre de 1997. Durante ese transcurso de tiempo el Dr. Viqueira continuó presentando para la consideración de Triple S evidencia a su favor. Con posterioridad, el 16 de enero de 1998, el Sr. Miguel Vázquez, presidente de Triple S, le notificó al Dr. Viqueira que la Junta de Directores de Triple S había decidido suspender su contrato como médico participante por un año por sobreutilización del código V9031 y por facturación incorrecta negligente. Además, se le reclamó el pago de $50,544.52 por concepto de las deficiencias incurridas. Se le informó de que poseía un término de 45 días para solicitar una audiencia ante el Comité.

El 1 de abril de 1998 se celebró la vista ante el Comité, en la cual se le dio la oportunidad al Dr. Viqueira de exponer todos los planteamientos que tuviera a bien efectuar relacionados con la auditoría llevada a cabo en su

oficina. Se cumplió a cabalidad con la sección 6 del Reglamento, la cual establece el procedimiento a seguir durante la celebración de la vista. El 26 de mayo de 1998 el secretario de la Junta de Directores de Triple S (la Junta), Dr. Luis Ruiz Rivera, le notificó al Dr. Viqueira que la Junta había decidido ratificar su decisión inicial sobre la suspensión del contrato como médico participante por el término de un año y recuperar el sobrepago ascendente a $50,326.76. Le informó que los servicios con discrepancias finalmente resultaron ser los siguientes: servicios por médico no participante, servicios no documentados y necesidad médica no justificada.

Así las cosas, el Dr. Viqueira presentó ante el Tribunal de Primera Instancia una demanda sobre incumplimiento de contrato y daños y perjuicios en contra de Triple S. Luego de varios incidentes procesales, los cuales es innecesario señalar, Triple S presentó una Solicitud para que se Dicte Sentencia Sumaria Desestimando la Demanda para que se Proceda a Arbitraje Conforme el Convenio entre las Partes. El 20 de enero de 1999, el foro apelado dictó sentencia mediante la cual desestimó la demanda y ordenó a las partes acudir al procedimienuo de arbitraje pactado en el contrato. Basó su dictamen en el hecho de que la suspensión del contrato constituia una disputa o controversia entre las partes y que, de conformidad con el contrato, la misma debía ser sometida al proceso de arbitraje.

Inconforme, el Dr. Viqueira apeló ante este Tribunal, imputándole al Tribunal de Primera Instancia haber incidido al concluir que el caso de autos debía dilucidarse a través del procedimiento de arbitraje. Un mes después, el Dr. Viqueira presentó un escrito de *certiorari* en el cual solicitó la revisión de una orden dictada por el Tribunal de Primera Instancia mediante la cual autorizó las partidas primera y segunda del memorando de costas presentado por Triple S. Mediante Resolución de 12 de abril de 1999 ordenamos la consolidación de los recursos presentados.

## II

La Ley Núm. 376 de 8 de mayo de 1951, en su Art. 1, 32 L.P.R.A. sec. 3201, establece que:

*"[D]os o más partes podrán convenir por escrito en someter a arbitraje... cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio de someter a arbitraje; o podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Tal convenio será válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio."*

Sabido es que existe una fuerte política en favor del arbitraje y que toda duda respecto a la existencia o no de dicho procedimiento debe resolverse a su favor. *World Films, Inc. v. Paramount Pict. Corp.*, 125 D.P.R. 352 (1990); *McGregor Doniger v. Tribunal Superior,* 98 D.P.R. 864, 869 (1970). Ante un convenio de arbitraje lo más prudente es la abstención judicial, aunque esa intervención no está vedada. *U.C.P.R. v. Triangle Engineering Corp.* 136 D.P.R ___, 94 J.T.S. 72.

Cuando un contrato contiene una cláusula de arbitraje se activa una presunción de arbitrabilidad. Bajo esas circunstancias, las *"dudas deben resolverse a favor de dicha cobertura." U.C.P.R. v. Triangle Engineering Corp., Id.; AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1985).

En nuestro ordenamiento jurídico permea un interés en promover las cláusulas de arbitraje contractuales. *U. C.P.R. v. Triangle Engineering Corp., supra.* En dicho caso nuestro Tribunal Supremo expresó lo siguiente:

*"Es un corolario necesario del principio de 'que el arbitraje es una materia de contrato' que cuando las partes han provisto que un tipo particular de disputa debería ser arreglada en arbitraje, en lugar de en litigación, un tribunal no vulnerará dicho acuerdo decidiendo por sí mismo dicha disputa."* (Citas omitidas)

## III

Tomando en cuenta los principios enumerados anteriormente, hoy nos toca resolver si Triple S y el Dr. Viqueira pactaron arbitrar la controversia surgida entre ambos. Debemos comenzar por precisar cuál es ésta. Como acertadamente sostiene Triple S en su alegato, la controversia entre las partes surgió como consecuencia de una auditoría cuyos resultados afectaron adversamente al Dr. Viqueira. Esto provocó que luego de que le fue notificada la decisión de suspenderle el contrato, el Dr. Viqueira presentara la demanda de autos sobre incumplimiento de contrato. Solicitó en la misma que se dejara sin efecto la suspensión del contrato decretada por Triple S y el resarcimiento de los daños y perjuicios contractuales sufridos. El Dr. Viqueira alegó en la demanda lo siguiente:

*"Las actuaciones de Triple S al suspender sumariamente el contrato de médico participante del Dr. Viqueira constituyen un craso incumplimiento con los términos y condiciones que vinculan a las partes, toda vez que dicho contrato no permite la suspensión temporal del mismo. Tanto el contrato en cuestión como el Reglamento sobre Disputas y Controversias entre Participantes y Triple S proveen un procedimiento específico para su cancelación o terminación, mas no contemplan disposición alguna que admita el que alguno de los contratantes unilateralmente ponga en suspenso por el término de un año los efectos de la relación obligacional respecto a su contraparte."*

De una lectura somera de las pretensiones del Dr. Viqueira se desprende que los extremos que reclamó en la demanda constituyen disputas o controversias arbitrables, según se definen estos términos en el contrato. En el contrato se pactó expresamente que se consideraba una controversia o disputa, entre otras, aquella situación en que una de las partes contratantes entiende que la otra ha incurrido en una violación de los términos y condiciones del contrato.

El caso a quo es uno donde claramente la partes pactaron la arbitrabilidad de la controversia suscitada entre ellas. Sabido es que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Sobre este particular, en *García Curbelo v. Autoridad de las Fuentes Fluviales,* 127 D.P.R. 747 (1991), se expresa que si los términos, condiciones y exclusiones de un contrato son claros, específicos y no dan margen a ambigüedades o diferentes interpretaciones, así deben aplicarse.

En atención a lo expresado, no erró el Tribunal de Primera Instancia al desestimar la demanda y ordenar a las partes acudir al procedimiento de arbitraje que habían pactado contractualmente, a tenor con el Art. 3 de la Ley de Arbitraje, 32 L.P.R.A. sec. 3203.

## IV

Recientemente en *Aponte v. Sears Roebuck de P.R. Inc.,* 145 D.P.R. ___ (1998), **98 J.T.S. 40,** el Tribunal Supremo resumió la normativa imperante en nuestro ordenamiento jurídico relativa a la imposición de costas. Se expresó que la Regla 44.1(a) de las Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(a), tiene una función reparadora. El fin de su concesión es resarcir a la parte victoriosa los gastos necesarios y razonables incurridos durante la tramitación del pleito. La imposición de costas a la parte perdidosa es mandatoria. El tribunal que concede dicha partida debe determinar quién fue el litigante vencedor y cuáles gastos fueron necesarios y razonables. *Blás v. Hosp. Guadalupe,* 146 D.P.R. ___ (1998), **98 J.T.S. 101.**

De conformidad con la normativa antes aludida, no hay duda de que el Tribunal de Primera Instancia actuó correctamente al imponer al Dr. Viqueira el pago de costas de Triple S por concepto de la reproducción de los exhibits que se acompañaron al memorando de derecho presentado por esta última ante el foro apelado.

## V

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General